UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEXANDER BOSTIC,

      Plaintiff,

      v.                                      Case No. 0:22-cv-60661

MATARI BODIE,

      Defendant.

_____/

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

      Defendant, Matari Bodie ("Bodie" or "Defendant") files this reply in support of his Motion for Summary Judgment [D.E. 47]. The Court should grant Defendant's Motion for Summary Judgment because (1) the Business Loan Agreements are criminally usurious and cannot be enforced, including through a theory of unjust enrichment; (2) Defendant made no representations to the Assignors and did not direct the Plaintiff, Alexander Bostic ("Plaintiff" or "Bostic") to do so; and (3) no claim for civil theft can exist where the funds are not sufficiently identifiable. The undisputed facts demonstrate that Defendant was unknowingly a victim of a Ponzi-scheme and that his system of borrowing funds to invest in what he thought to be a legitimate operation imploded only when the Ponzi-scheme perpetrator ran off with the funds. Plaintiff and the non-parties that have assigned claims to him (the "Assignors") cannot enforce their criminally usurious loan agreements against Defendant through the contracts themselves or any other equitable or statutory means. As a result, Defendant is entitled to summary judgment.

**MEMORANDUM OF LAW**

    I.    **Defendant is Entitled to Summary Judgment on Plaintiff's Breach of Contract and Unjust Enrichment Claims**

      Plaintiff contends Defendant is not entitled to summary judgment on the breach of contract and unjust enrichment counts because (1) the Business Loan Agreements reflect investments as opposed to loans; (2) Defendant has not demonstrated Plaintiff and the Assignor's corrupt intent;

and (3) Defendant did not plead usury as a defense to the unjust enrichment claim.  Each of these contentions is unfounded, and Defendant is entitled to summary judgment.

First, Defendant did plead usury as a defense to Plaintiff's claim of unjust enrichment.  Defendant's Fifth Affirmative Defense states, in relevant part": Unclean Hands:  . . . Mr. Bostic is attempting to enforce criminally usurious agreements." [D.E. 33 at p. 6].  The Fifth Affirmative Defense is asserted generally against the Plaintiff's claims, including the count for unjust enrichment.  Thus, Plaintiff's argument that Defendant failed to plead usury as a defense to the unjust enrichment count is without merit.

Second, there is no question that the Business Loan Agreements, based on the record before the Court, are loans and not investments.  To support his theory, Plaintiff points to the three lines in the Business Loan Agreements that refer to a "business investment", "business deal" and "investing".  However, these terms do not transform what is clearly a loan into an investment.  *See Pinchuck v. Canzoneri*, 920 So. 2d 713, 715 (Fla. 4th DCA 2006) ("Even though the agreements . . . were put in terms of investment and the return is called profit, not interest, this does not change our conclusion that these were loans and the transactions were usurious.").  Here, the undisputed terms of the Business Loan Agreements "are indicative of a simple loan".  *Saralegui v. Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.*, 19 So. 3d 1048, 1051 (Fla. Dist. Ct. App. 2009) (affirming summary judgment in favor of defendants who asserted "the agreements were unenforceable because they were merely loan agreements that violated Florida's usury laws").  "No stock, partnership interests, or other indicia of equity were issued to" Plaintiff or the Assignors.  *Id.*  "The repayment date and repayment amount were absolute and were not made contingent upon the success of the underlying venture." *Id. [D.E. 63 at ¶¶20; 23; 27; 29; 31; 33; 35; 37; 39-41; 43; & 44]*.  Indeed, if payment was made more than ten days after the due date, then the Plaintiff and Assignors were entitled to a late fee. *See, e.g.,* [D.E. 63 at ¶13 & ¶19].  "[T]here [is] no genuine dispute that the purported transactions, even if referred to as 'investments', were actually short-term loans." *Saralegui*, 19 So. 3d at 1051 n. 1.

Second, Defendant is entitled to summary judgment because the record demonstrates that Plaintiff and the Assignors had the intent to collect more interest than allowable by law.  Nothing more is required.  Defendant need not demonstrate that Plaintiff and the Assignors had "knowledge of the usury statutes themselves" or "a specific intention to violate them[.]" *Saralegui*, 19 So. 3d at 1051. "[R]ather, it requires proof that the lender intended to collect payments for the loan which,

when expressed as a simple rate of interest per annum, exceeded the maximum allowable rate." *Id*.; *see US Connect, LLC v. Capital Solutions Bancorp LLC*, 2013 WL 4401840, *3 (M.D. Fla. Aug. 14, 2013) (denying motion to dismiss usury claims where agreement consisted of an agreement to pay a greater rate of interest than allowed by law and defendant intended to collect such payments); *Security Life of Denver Ins. Co v. Shah*, 906 F. Supp. 2d 1334, 1345-46 (S.D. Ga. 2012) (construing Florida law,  granting summary judgment in favor of party alleging usury, and finding that "there is a corrupt intent to take more than the legal rate" where "the lender had the intent to exact interest in an amount that is usurious in fact and in law"). Both Plaintiff and the Assignors absolutely intended to collect the illegal rates of interest set forth in these agreements – so much so that they filed the Complaint in this action asking this Court to award them the illegal interest.

It also does not matter if Defendant is the one who supplied the Business Loan Agreements to Plaintiff and the Assignors.

> "Neither ignorance of the law *nor the fact that the suggestion of the usurious rate emanated from the borrower*, . . . nor the fact that a plan or scheme to circumvent usury was embraced by both parties, where the amount of interest is in fact usurious and known to the lender to be, will absolve [the lender] from the penalties involved because of usury."

*River Hills, Inc. v. Edwards*, 190 So. 2d 415, 424 (Fla. Dist. Ct. App. 1966) (emphasis added).  To rebut this established point of law in Florida, Plaintiff cites to a number of non-controlling cases, all of which are readily distinguishable and cannot prevent summary judgment in favor of Defendant. Plaintiff argues that these cases demonstrate that Defendant is barred from asserting a usury defense pursuant to an estoppel theory.  However, these cases include a key ingredient absent here – they involve a fiduciary relationship or a scenario where the borrower possessed superior knowledge.[1]  In *Cohn v. Receivables Finance Co*., the court held that an attorney who borrowed money from his client could not invoke a usury defense. 123 Ill. App. 2d 224, 226 (Ill. 1st Dist.

---

[1] With the exception of *Rogus v. Continental Illinois Nat'l bank & Trust Co. of Chicago*, 4 Ill. App. 3d 557 (Ill. 1st Dist. 1972), all of the cases relied upon by Plaintiff to support their estoppel claim includes some type of relationship of trust, a fiduciary relationship, or a more knowledgeable borrower, such as an attorney. The *Rogus* case is based on Illinois law and has been limited by the Supreme Court of Illinois, which held that "a rule of law that precludes borrowers from raising the usury defense simply because they initiate and then participate in securing the loan would be inconsistent with the Illinois usury statute." *Commercial Mortgage & Finance Co. v. Life Sav. Of America*, 541 N.E. 2d 661, 664 (Ill. 1989).

1970).  Critical to the court's reasoning was that the borrower was a fiduciary to the lender.  Thus, the court held that "because of his unconscionable acts in breach of the highest fiduciary obligation, defendant is estopped from affirmatively pleading the defense of usury." *Id*. at 228. Similarly, *Liebergesell v. Evans* involved a fiduciary relationship. 93 Wash.2d 881 (Wash. 1980) (noting that "the existence of a fiduciary relationship between the parties and the general duty to contract in good faith" may create a possible estoppel defense to claim of usury).   In *Massie v. Rubin*, the court allowed an estoppel defense where "the record show[ed] that the defendant was a practicing attorney who apparently needed money to finance a real estate operation, and that the form of the transaction was entirely shaped by him." 270 F. 2d 60, 62 (10th Cir. 1959). Finally, *In re Vision Development Group of Broward County, LLC* is distinguishable because, as the court pointed out there, material to its decision that the debtor was equitably estopped from asserting usury was that the debtor's legal counsel issued an opinion letter stating that the interest rate on the loan was legal under Florida law. 411 B.R. 768, 772 (S.D. Fla. Bankr. 2009).  No such representation was made here by Defendant's counsel or Defendant.

Moreover, no fiduciary relationship was alleged between Bodie on the one hand and Bostic and the Assignors on the other hand.  There is no evidence in the record of any fiduciary relationship or relationship of trust.  To the contrary, the undisputed facts are that Bodie never spoke with any of the Assignors at or before the time when they entered into the Business Loan Agreements.  Moreover, Bodie did not spearhead the drafting of these agreements;  the undisputed record reflects that he simply copied and pasted from the agreements he had with Pinder.  [D.E. 69 at ¶74]. Thus, this is not a situation in which Defendant "drew the contact" and took advantage of an "unsophisticated and unsuspecting lender who was entitled to rely on the good faith of her lawyer."  *Cohn*, 123 Ill. App. 2d 224, 228.  By contrast, the evidence in the record reflects that Bostic is an entrepreneur with multiple ventures and that one of the Assignors reviews "contracts for a living" and is used to "looking at [their] terms and conditions."  [D.E. 69 at ¶74].

## II.     Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Fraud

Summary judgment should also be granted for Defendant because he never spoke with the Assignors about the Business Loan Agreements and did not know that Plaintiff would encourage members of his congregation to participate in the Business Loan Agreements. It is without dispute that the Assignors only entered into the Business Loan Agreements based upon Plaintiff's

representations and the fact that Plaintiff had successful transactions with Defendant previously. *See* [D.E. 63 at ¶ 21-22; 25-26; 28; 30; 32; 34; 36; 38; 42; 44; and 46].

Plaintiff's reliance upon *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, is misplaced and cannot prevent summary judgment in favor of Defendant. 650 F. Supp. 2d 1213, 1232 (S.D. Fla. 2009). In *Sierra Equity Group*, the court denied a motion to dismiss a fraudulent inducement claim despite the defendant's argument that misrepresentations were not made directly to the plaintiffs. The Court reasoned that the "allegations of knowledge and intent to have [another party] pass the misrepresentations and omissions" to the aggrieved parties were sufficient to state a claim for fraud. *Id.* Plaintiff completely ignores the uncontroverted evidence that (1) "[Defendant] did not suggest to [Plaintiff] that [Defendant] find other people to enter into the Business Loan Agreements"; (2) Plaintiff reached out to Defendant to advise that people wanted to enter into the Business Loan Agreements; and (3) the Assignors only learned of the opportunity to enter into the Business Loan Agreements because of Plaintiff. [D.E. 63 at ¶ 21-22; 25-26; 28; 30; 32; 34; 36; 38; 42; 44; and 46]. Thus, Defendant did not know that any of his representations would be passed along to third parties by Plaintiff; to the contrary, Plaintiff took it upon himself to inform his congregation of the transactions he had with Defendant. As a result, the *Sierra* case does not change the outcome that Defendant is entitled to summary judgment because this is not a scenario in which Defendant had knowledge that any of his representations would be passed along to the Assignors.

Plaintiff also contends that Defendant is not entitled to summary judgment because Defendant was aware of problems with Pinder (the mastermind of the Ponzi scheme) in June 2021 when Pinder was in the hospital. Assuming this to be true for purposes of this motion only, it does not preclude summary judgment in favor of Defendant. First, Plaintiff admits that "[i]f Bodie knew that Pinder was lying about providing loans to personal injury victims, and was instead running a Ponzi-like scheme, he never would have invested his own money or borrowed money from others to invest with Pinder." [D.E. 63 at ¶67]. Thus, Plaintiff acknowledges that Bodie was not aware of Pinder's wrongdoing.

Second, Pinder being in the hospital does not equate to her stopping her payments. The timeline is important here. There is no genuine dispute as to the following:

1. April 2020: Defendant begins investing in Pinder's personal injury program. [D.E. 63 at ¶1].

5

2.  May 2021: Defendant and Plaintiff enter into a Business Loan Agreement relating to Pinder's personal injury program.  [D.E. 63 at ¶13].

3.  June 22, 2021:  Plaintiff tells Defendant "Boy I appreciate you. I'm coming back." [D.E. 63 at ¶14].

4.  June 24, 2021:  Pinder texts photos to Defendant of her in the hospital. [D.E. 69 at ¶76].

5.  July 5, 2021:  Plaintiff and Defendant enter into another Business Loan Agreement for Pinder's personal injury program. At this time, Pinder is still repaying Defendant on her obligations to him. [D.E. 63 at ¶15-16].

6.  September 4, 2021:  Pinder makes her last payment to Defendant in the amount of $40,000. [D.E. 63 at ¶10].

7.  September 15, 2021: Defendant and Plaintiff enter into another Business Loan Agreement relating to Pinder's personal injury program. [D.E. 63 at ¶20].

8.  September 16, 2021:  Plaintiff asks to "leave some [money] in" and to pay only $32,500 on the July 5, 2021 Business Loan Agreement. Thus, Defendant repaid Plaintiff $32,650 (the additional $150 being paid as a late fee). [D.E. 63 at ¶17-19].

9.  September 27, 2021 to October 20, 2021:  Defendant entered into the Business Loan Agreements with the Assignors.  [D.E. 63 at ¶23-44].

10. November 2021: After realizing that Pinder had run off with the money, Defendant returns $200,000 to an entity related to Henry Smith, the pastor of the Way of Yah Congregation, of which the Assignors are all members.  [D.E. 63 at ¶45; 49-52].

The undisputed evidence is that Pinder's last payment to Defendant occurred in September 2021, not in June while she was in the hospital. Indeed, Pinder was still paying Defendant when he and Plaintiff entered into their May and July 2021 business loan agreements.  Defendant continued to re-pay Plaintiff even after Pinder's last payment of $40,000 on September 4, 2021. Thus, this record does not indicate that Defendant knew at the time he entered into the Business Loan Agreements that Pinder would no longer honor her obligations. Nor does the record reflect an intention by Defendant not to honor his obligations under the Business Loan Agreements.

Moreover, while Defendant utilized at least some of the funds he borrowed pursuant to the Business Loan Agreements to pay off other loans he took out to participate in Pinder's personal injury program, he did so only because he believed that Pinder would continue to honor her obligations such that Bodie could meet his loan obligations to Plaintiff and the Assignors. [D.E.

6

58-2 at ¶9]. Regardless of whether Defendant paid the loan proceeds directly to Pinder or to pay off another loan so that he could continue with Pinder's loan program, the funds were ultimately used to allow Defendant to continue to participate in Pinder loan program – which turned out to be a Ponzi scheme.

Finally, to the extent Plaintiff contends (1) that the words of the Business Loan Agreements themselves are the basis of the fraud claim and (2) Defendant entered the Business Loan Agreements without an intention of actually honoring them, then his fraud claim is nothing more than a re-casting of his breach of contract claim and cannot withstand summary judgment. The Eleventh Circuit affirmed a summary judgment dismissing a fraud claim under such circumstances. *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC,* 904 F. 3d 1197, 1222-23 (11th Cir. 2018). There, the Court reasoned that "misrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, where such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." *Id*. at 1223. This is so even where the party asserting fraud alleges the other party had a "secret intent" not to honor its obligations under the agreement. *Id*.; *see also Bluestar Expo, Inc. v. Enis*, 568 F. Supp. 3d 1332, (S.D. Fla. 2021) (dismissing fraudulent representation claim because it was a "recast version[] of [a] breach-of-contract claim" insofar as the misrepresentation was not separable from the breach-of-contract and the damages under either theory were the same); *Perez v. Scottsdale Ins. Co*., 2020 WL 607145, *2 (S.D. Fla. Feb. 7, 2020) (finding that, under Florida law, "[t]o bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract" and "for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach").

Because Defendant (1) had no contact with the Assignors, other than one conversation with Pastor Henry Smith of The Way of Yah well after The Way of Yah entered into its Business Loan Agreement; (2) did not direct Plaintiff or know that Plaintiff would share information about the Pinder business loan agreements with the Assignors; and (3) did not knowingly make any false representations, he is entitled to summary judgment on Plaintiff's fraud claim.

### III.     Defendant Is Entitled to Summary Judgment on Plaintiff's Civil Theft Claim

Plaintiff points to the Court's ruling on the motion to dismiss as a safe harbor for his civil theft claim. However, we now have the benefit of deposition testimony and other discovery and admissions.  Plaintiff concedes that "[i]f Bodie knew that Pinder was lying about providing loans to personal injury victims, and was instead running a Ponzi-like scheme, he never would have invested his own money or borrowed money from others to invest with Pinder." [D.E. 63 at ¶67]. Thus, Plaintiff acknowledges that Defendant did not enter the Business Loan Agreements with the knowledge that the basis of the entire Pinder personal injury program was a lie and Ponzi scheme. Moreover, the undisputed facts, as reflected in the record, establish that Defendant used the loan proceeds to continue to participate in the Pinder personal injury program by paying off other business loan agreements and awaiting payment from Pinder on her obligations to Defendant.  The record does not reflect a "sophisticated scheme of deceit and theft" by Defendant; it instead reflects a scheme of deceit and theft perpetrated by Pinder against Defendant. *See* [D.E. 62 at 10].

Plaintiff's contention that the funds at issue here are sufficiently identifiable to support a civil theft count is without merit.   Bostic's reliance upon *Zinn v. Zinn* is misplaced. 549 So. 2d 1141, 1142 (Fla. 3d DCA 1989). There, the court rejected the defendants' arguments that the "funds involved were not specifically identifiable property subject to conversion" because the cases upon which the defendants relied to support their argument were predicated on contractual obligations between the parties.  The court noted that no such contracts existed between the defendants and plaintiffs in the *Zinn* case. *Id*.; *see Meridian Trust Co. v. Batista*, 2018 WL 4760277 (S.D. Fla. Sept. 30, 2018) ("In cases that do not involve a contractual relationship, Florida appellate courts have found that investments made in reliance on fraudulent representations are sufficiently identifiable to constitute the basis of a claim for civil theft"). Here, the Business Loan Agreements clearly exist (even though they are criminally usurious) between Bostic and the Assignors on the one hand and Mr. Bodie on the other hand. And as discussed in the preceding section, Defendant made no fraudulent representations to the Assignors or Plaintiff.

*Eagle v. Benefield-Chappel, Inc*., 476 So. 2d 716 (Fla. 4th DCA 1985), also does not prevent entry of summary judgment in favor of Defendant. There, the court held that the conversion occurred where funds were disbursed without authorization because the funds were to "be held intact and released only upon *written confirmation* by the" plaintiffs. *Id*. at 718 (emphasis added). Here, there was no obligation to obtain the Assignors' permission (written or otherwise)

before disbursing any of the funds at issue in this litigation.  To the contrary, the money at issue here was "fungible, was not placed into an escrow account, and was the express subject of the [Business Loan Agreements]".  *Opus Grp., LLC v. Int'l Gourmet Corp.*, 2013 WL 12383483, at *5 (S.D. Fla. Mar. 12, 2013). "No charge of civil theft could even remotely be stated on the facts of this case, and summary judgment" should be entered in Defendant's favor. *Id.*

The record is clear. Defendant was not required to maintain the funds he borrowed from Plaintiff and the Assignors in a segregated or separate account or in a trust or escrow account. [D.E. 58-2 at ¶13; *see* Business Loan Agreements generally at D.E. 58-3 at Exs. 1-6]. Thus, the funds are not sufficiently identifiable such that they can support a claim for civil theft.  *See Aileron Inv. Mgmt., LLC v. Live Oak Banking Co*., 2021 WL 1238401, *3 (M.D. Fla. Apr. 2, 2021) (dismissing with prejudice a claim for conversion where funds were not specific and identifiable because the plaintiff did not allege "the premiums had to be segregated, kept in a separate account, or in a trust account); *MKT Reps S.A. de C.V. v. Standard Chartered Bank Itn'l (Americas) Ltd*., 2012 WL 1852411, *1 (S.D. Fla. May 21, 2012) (granting summary judgment in favor of defendant on conversion claim where plaintiff "failed to satisfy the requirement that the money that forms the basis of the conversion is specific and identifiable"); *Gilbert v. Caddy, P.A. v. JP Morgan Chase Bank, N.A*., 2015 WL 12862724, *6 (S.D. Fla. Aug. 20, 2015) ("Absent identification of the allegedly converted funds, a claim for conversion cannot stand. Stated more specifically, because the complaint alleges neither that [defendant] retains the money in a separate account nor that [defendant] still possesses the money, the underlying claim for conversion fails"); *see Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1286 (S.D. Fla. 2021) (dismissing conversion claim where funds were not sufficiently identifiable even though funds at issue were wired to account).

> This is not a case where a party intentionally received a specifically identifiable sum of money knowing that he had no right to take it and who refused to give it back[.] This is not a case where a party refused to pay over to the demanding party a specific fund capable of separate identification required to be deposited into a special account[.] A breach of contract to pay money in general does not constitute conversion under the law of Florida.

*Rosen v. Marlin*, 486 So. 2d 623, 625-26 (Fla. 3d DCA 1986).  Thus, Defendant is entitled to summary judgment on the civil theft claim.

For these reasons, Defendant, Matari Bodie, respectfully requests that the Court grant summary judgment in his favor and for such further relief as the Court deems just and equitable.

Respectfully submitted,

Strader Paschal PLLC
150 S. Pine Island Road, Suite 300
Plantation, FL 33324
Tel: (954) 880-1260

By: */s/ Yolanda P. Strader*
Yolanda P. Strader
Florida Bar No. 70212
yolanda@straderpaschal.com
Bryan L. Paschal
Florida Bar No. 091576
bryan@straderpaschal.com

Lomax Legal PLLC
95 Merrick Way
3rd Floor
Coral Gables, Florida 33134
Telephone: (305) 582-6506

By: */s/ Christopher M. Lomax*
Christopher M. Lomax
Florida Bar No. 56220
chris@lomaxlegal.com

*Attorneys for Defendant, Matari Bodie*